IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRINA S. GOLUBOSKY, )
)
        Plaintiff, )
)
  vs. ) Civil Action No. 3:13-196
)
COMMISSIONER OF SOCIAL SECURITY, )
)
        Defendant. )
)

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 9 and 13). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 10 and 14). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 13) is granted and Plaintiff's Motion (Docket No. 9) is denied.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Plaintiff protectively filed an application for DIB on or about July 7, 2010. (R. 10, 139-48, 160, 184). In her application, she alleged that since April 3, 2006, she had been disabled due to fibromyalgia,

arthritis, gastroesophageal reflux disease, memory loss, diabetes, and osteoporosis. Id. Plaintiff's date last insured for DIB purposes was December 31, 2010. (R. 160).[1] Administrative Law Judge ("ALJ") Geoffrey S. Casher held a hearing on September 21, 2011, at which Plaintiff was represented by counsel. (R. 23-54). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. In a decision dated December 22, 2011, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 10-18). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on June 25, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-5). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 9 and 13). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to

---

[1] To receive DIB, Plaintiff must establish that she became disabled prior to December 31, 2010, the date on which her insured status expired, or "date last insured." 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

2

resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional

3

capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

## B. WHETHER THE ALJ ERRED IN FINDING THAT PLAINTIFF'S MENTAL IMPAIRMENTS WERE NOT SEVERE

Plaintiff argues that the ALJ erred at Step 2 of the sequential evaluation process in determining that her mental impairments – depression and anxiety/stress – were non-severe. Pl.'s Br. [ECF No. 10] at 7-14. Plaintiff's argument is without merit.

The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47.[2]

---

[2] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's

4

In cases involving mental impairments, the Social Security Administration Regulations set forth a specific technique for determining whether the mental impairment is severe. 20 C.F.R. § 404.1520a. Under this technique, if the ALJ determines that a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment, he then must assess the claimant's limitations in four functional areas to determine whether that impairment is "severe." Id. § 404.1520a(b). The four functional areas include: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Id. § 404.1520a(c). If the ALJ rates the degree of the claimant's limitation in the first three functional areas as "none" or "mild" and as "none" in the fourth area, he generally will conclude that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1). In his written decision, the ALJ must incorporate his pertinent findings and conclusions based on this technique, including a specific finding as to the degree of limitation in each of the four functional areas. Id. § 404.1520a(e). The key question when reviewing the ALJ's Step 2 determination is not whether Plaintiff's impairments were in fact severe, but, rather, whether substantial evidence supports the ALJ's finding that those impairments were not severe.

In this case, I agree with Defendant that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are not severe. As an initial matter, the ALJ properly analyzed Plaintiff's impairment in accordance with the special technique set forth in 20 C.F.R. § 404.1520a. First, the ALJ recognized that Plaintiff had a history of depression and anxiety/stress, situational,

---

determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

both medically determinable impairments. (R. 13).[3] He then properly analyzed those impairments in accordance with the special technique outlined above, including making specific findings as to the degree of limitation in each of the four functional areas as a result of Plaintiff's mental impairments. Id. In this regard, the ALJ concluded that Plaintiff had no more than "mild" limitation with respect to activities of daily living; social functioning; and concentration, persistence, or pace; and there was no evidence of any episodes of decompensation of extended duration. Id. Based on his analysis, the ALJ concluded that Plaintiff's mental impairment was not severe. Id. (citing 20 C.F.R. § 404.1520a(d)(1)).

The ALJ properly supported these findings with substantial evidence in the record. See R. 13 (citing, inter alia, Exhibits B2E, B6F, B7F, B10F, B11F, B12F, B14F, B17F, B19F, B20F, B22F, and Plaintiff's hearing testimony). For example, the ALJ cited Plaintiff's "Function Report" and hearing testimony which reflect that, although Plaintiff described some difficulty with memory, concentration, and following instructions, she also reported that she was able to care for her personal needs independently; care for her children; watch television; drive; and perform various household chores such as preparing meals, cleaning, doing laundry, and shopping. (R. 13, 15, 27-48, 163-170). The ALJ also noted that none of the records reflect any episodes of decompensation of extended duration,[4] and that there was no evidence that Plaintiff's conditions

---

[3] The ALJ also found that Plaintiff had other non-severe impairments, including: right foot bunion, status post bunionectomy; non-insulin dependent diabetes mellitus; TMJ; and hemorrhoids. (R. 13). Plaintiff does not challenge the ALJ's "non-severe" finding with respect to these impairments. Thus, I do not address them further here.

[4] An "episode of decompensation" is an exacerbation or temporary increase "in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. . . . Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). The Appendix to the regulations defines "repeated episodes of decompensation, each of

6

required aggressive medical treatment or frequent hospital or emergency care.  (R. 13).

Plaintiff argues that the ALJ's Step 2 analysis was nevertheless flawed because he failed to acknowledge or discuss the August 31, 2010 opinion of State Agency consultant Sharon Tarter, Ph.D.  Pl.'s Br. [ECF No. 10] at 16-18.  Plaintiff contends that Dr. Tarter opined that Plaintiff's memory loss and depressive disorder contributed to moderate difficulties in maintaining concentration, persistence, or pace, and, therefore, were severe impairments.  Id. at 16. Plaintiff states that Dr. Tarter further opined that Plaintiff had a moderately limited ability to carry out detailed instructions, interact appropriately with the general public, and respond appropriately to changes in the work setting.  After careful review, I find no error in this regard.

As an initial matter, Plaintiff's contention that the ALJ failed to acknowledge Dr. Tarter's report is simply incorrect.  To the contrary, the ALJ plainly supports his conclusions at step two with citation to both the Mental Residual Functional Capacity Assessment (R. 363-365, Ex. B11F) and Psychiatric Review Technique Form (R. 366-379, Ex. B12F) Dr. Tarter completed.  See R. 13 (citing Exs. B11F & B12F). The fact that the ALJ did not discuss Dr. Tarter's opinions in detail is not fatal to his analysis.  See e.g., Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (there is no need for the ALJ to discuss or refer to every piece of relevant evidence in the record as long as the reviewing court can determine the basis of the decision); Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").  Dr. Tarter's opinion that Plaintiff had moderate (rather than no or mild) difficulties in maintaining concentration, persistence, or pace likewise is non-dispositive. (R. 376).  First, Dr. Tarter's opinion was only one of many pieces of evidence on which the ALJ relied in reaching his step two conclusions.  (R. 13).  Viewed as a whole, the exhibits to which

---

extended duration" as three episodes of decompensation within one year, or an average of once every four months, each lasting for at least two weeks.  Id.

7

the ALJ cites contain substantial evidence supporting his conclusion that Plaintiff's mental impairments were not severe. Second, Dr. Tarter found only mild restriction of Plaintiff's activities of daily living, mild difficulties in Plaintiff's ability to maintain social functioning, and no repeated episodes of decompensation. (R. 376). In her Mental Residual Functional Capacity Assessment, Dr. Tarter opined that Plaintiff was moderately limited in only two of eight areas related to "sustained concentration and persistence" and in only four of twenty areas overall. She opined that Plaintiff was "not significantly limited" in the remaining sixteen areas. (R. 363-365). Dr. Tarter further explained that Plaintiff's:

> basic memory processes are intact. She is capable of working within a work schedule and at a consistent pace. She can make simple decisions. She is able to carry out very short and simple instructions. Her ADL's and social skills are functional. She can sustain an ordinary routine and adapt to routine changes without special supervision. Additionally, she retains the ability to perform repetitive work activities without constant supervision. There are no restrictions in her abilities in regards to understanding and memory.

(R. 365). Thus, overall, Dr. Tarter's opinions support, rather than detract from, the ALJ's findings of nonsevere mental impairments.

In addition, and in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when he concluded that Plaintiff's degenerative joint disease, bilateral hips; right acetabular impingement; osteoarthritis; hiatal hernia; GERD; migraine headaches; fibromyalgia; and arthralgias were severe impairments. (R. 12-13). The ALJ ruled against Plaintiff at steps four and/or five of the sequential evaluation process, after concluding that her residual functional capacity was sufficient to enable her to perform certain light work existing in the economy. Moreover, contrary to Plaintiff's arguments, the ALJ considered all of Plaintiff's impairments, including her alleged mental impairments, in making his residual functional capacity determination. (R. 14, 16-17). Indeed, the ALJ included limitations to account for Plaintiff's mental impairments in his RFC

8

finding, including the limitations noted by Dr. Tarter.  See R. 14-16 (limiting Plaintiff to "simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions, meaning no more than 1 to 2 step processes, with few work place changes").  Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis, even if he had erroneously concluded that her mental impairments were not severe, any such error was harmless.  See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

In short, the ALJ's finding that Plaintiff's mental impairments were not severe is supported by substantial evidence, and/or any error in this regard was harmless.  Accordingly, Plaintiff's Motion for Summary Judgment on this issue is denied.

**C.  WHETHER THE ALJ FAILED TO ACCURATELY SET FORTH ALL OF PLAINTIFF'S LIMITATIONS IN HIS HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT**

Plaintiff argues that because the ALJ found that her mental impairments were non-severe, he erroneously failed to obtain vocational expert testimony concerning her non-exertional limitations.  Pl.'s Br. [ECF No. 10] at 18-20.  I disagree.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  As set forth above, Plaintiff's argument that the ALJ improperly evaluated the severity of her mental impairments is without merit.  Further, and in any event, the ALJ not only obtained vocational expert testimony at the hearing, but also incorporated Plaintiff's non-exertional limitations supported by the record in his hypothetical questions to the VE.  See R. 49-50 (describing a hypothetical person limited to, inter alia, "simple, routine tasks involving no more than simple, short instructions; simple work-related decisions with few workplace changes – basically one- and

two-step task-type jobs"). In response to the ALJ's questioning, the VE concluded that there was work in the local and national economy that such an individual could perform. (R. 49-51). As explained fully in the preceding section, substantial evidence supports the ALJ's conclusion that Plaintiff did not have any greater limitations.

Because the ALJ properly considered Plaintiff's limitations supported by the record, including limitations related to her mental impairments, I find no error on this issue.

### D.  WHETHER THE ALJ FAILED TO GIVE APPROPRIATE WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN

Plaintiff argues that the ALJ failed to give appropriate weight to Plaintiff's long-term treating physician, Lisa Duvall, D.O. The specific record about which Plaintiff complains is a short letter dated May 12, 2009, from Dr. Duvall, in which Dr. Duvall describes Plaintiff's impairments and states her belief that those impairments would significantly compromise Plaintiff's ability to attend work consistently and to sit and perform regularly on a routine basis. See R. 16 (citing Ex. B21F, R. 479-480). Dr. Duvall also opined that Plaintiff would not "be able to participate in a routine 8-hour day/40-hour work week and as such is likely chronically disabled." See id. Plaintiff contends that the ALJ erroneously favored the opinion of non-examining physician, Reynaldo Torio, over that of Dr. Duvall. Pl.'s Br. [ECF No. 10] at 20-24. This argument is without merit.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. § 404.1527(c)(1). To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a

number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. § 404.1527. The ultimate issue of whether an individual is disabled within the meaning of the Act, however, is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a treating physician or other medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 404.1527(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Contrary to Plaintiff's suggestion, the ALJ here did not reject Dr. Duvall's conclusions based on his own speculation or lay opinions. Rather, he properly explained his findings and supported them with substantial evidence of record. As an initial matter, the ALJ correctly noted that Dr. Duvall's conclusion that Plaintiff was "chronically disabled" was an opinion on an issue reserved to the Commissioner and, therefore, was not entitled to controlling weight or deference. R. 16 (citing S.S.R. 96-5p). In accordance with applicable regulations, the ALJ further explained that Dr. Duvall's opinion was inconsistent with the record as a whole as well as Plaintiff's self-reported activities of daily living. The medical evidence to which the ALJ cited includes, inter alia, records from various treating sources, including Dr. Duvall, showing conservative treatment for her physical impairments consisting primarily of pharmacotherapy. See R. 15 (citing records from treating sources including, Dr. Branda, Dr. Lavelle, and Dr. Duvall). The ALJ also detailed Plaintiff's self-reported activities of daily living, including caring for personal needs independently, caring for her children, watching television, preparing meals, doing laundry, shopping, and driving. R. 15 (citing Ex. B2E and Pl.'s testimony).[5]

---

[5] The ALJ also noted that Dr. Duvall's correspondence did not provide a function-by-function analysis of Plaintiff's limitations or abilities. (R. 16).

The ALJ likewise did not improperly favor Dr. Torio's opinion[6] over that of Dr. Duvall. As an initial matter, state agency physicians and psychologists are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings as opinion evidence. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 n.2 (3d Cir. 2007); see also Cosby v. Comm'r of Soc. Sec., 231 F. App'x 140, 147 n.7 (3d Cir. 2007); Ferris v. Astrue, Civil No. 1:CV-07-0501, 2008 WL 417688, at *12 (M.D. Pa. Feb. 14, 2008) (state agency medical consultants' opinions are entitled to weight). Moreover, and in any event, the ALJ here did not significantly credit Dr. Torio's opinion over that of Dr. Duvall. Rather, the ALJ recognized that Dr. Torio was a non-examining physician and that his opinion was not entirely consistent with the record as a whole. As such, and giving Plaintiff the benefit of the doubt, the ALJ gave Dr. Torio's opinion some weight, but noted that the record supported greater limitations. (R. 16). The ALJ incorporated such greater limitations in his RFC finding. See R. 14 (RFC finding, containing numerous additional physical limitations).

In short, the ALJ's opinion makes clear both the weight the ALJ gave to Dr. Duvall's medical opinion and the reasons for that weight. The ALJ's findings are supported by substantial record evidence, and I find no error on this issue.

### E.     WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

Plaintiff also challenges the ALJ's conclusions regarding Plaintiff's credibility with respect to her complaints of pain and other disabling symptoms. Pl's Br. [ECF No. 10] at 24-31. These arguments are unpersuasive.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's

---

[6] Dr. Torio prepared a Physical Residual Functional Capacity Assessment in September 2010. (R. 380-387, Ex. B13F). Dr. Torio opined that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 2 hours in an 8-hour day; sit for about 6 hours in an 8-hour day; and had no other physical limitations. Id.

12

decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight."  S.S.R. 96-7p.   Ordinarily, an ALJ's credibility determination is entitled to great deference.   See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

As the ALJ stated, he must follow a two-step process when assessing pain:   first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning.  (R.14-15).   Statements about pain alone, however, do not establish a disability.   20 C.F.R. § 404.1529(a).   Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

In determining the limits on a claimant's capacity for work, the ALJ will consider the entire case record, including evidence from the treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain.   20 C.F.R. § 404.1529(c); S.S.R. 96-7p.   The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented.    20 C.F.R. § 404.1529(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible.   See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002).

After my own review of the record, I find that the ALJ followed the proper method to determine the Plaintiff's credibility. As laid out in his decision, the ALJ considered the factors set forth above and adequately explained the reasoning behind his credibility determinations. (R. 14-16). Indeed, the ALJ directly addressed Plaintiff's testimony that she experienced various forms of pain and did not reject her allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in his RFC finding. See R. 14 (RFC finding containing limitations on, inter alia, standing, sitting, bending, balancing, stooping, kneeling, crouching, crawling, climbing, and fingering). Nevertheless, the ALJ discussed the fact that Plaintiff's self-reported activities of daily living were inconsistent with an individual experiencing totally debilitating symptomology. (R. 15). For example, Plaintiff reported that she was able to care for her personal needs, care for her children, watch television, prepare meals, clean, do laundry, shop, and drive. See id. (citing Ex. B2E and testimony). The ALJ's analysis of the medical evidence, including her medication history and treatment other than medication, also reflects a fairly conservative course of treatment that does not support a finding of totally disabling pain. (R. 15-16).[7] Accordingly, I find that substantial evidence supports the ALJ's ruling and his rejection of parts of Plaintiff's testimony as not fully credible. See Burns, 312 F.3d at 130.

### III.  CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

---

[7] Plaintiff's suggestion that the ALJ discounted her "ongoing pharmacotherapy" as inconsequential or unsubstantial [ECF No. 10, at 29] is misplaced. The ALJ did not characterize Plaintiff's course of treatment as unsubstantial. Rather, he noted that her treatment consisted primarily of ongoing pharmacotherapy, but that there was no indication of other substantial or ongoing treatment. (R. 16).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRINA S. GOLUBOSKY,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 3:13-196

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 12th day of August, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED, and Plaintiff's Motion for Summary Judgment (Docket No. 9) is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge